**JOHNSON**

v.

**UNEMPLOYMENT COMPENSATION REVIEW COMMISSION et al.**

Court of Common Pleas of Ohio,
Medina County.

No. 00 CIV 0051.

Decided July 27, 2000.

*Richard Johnson, pro se.*

*Betty D. Montgomery,* Attorney General, and *Laurel Blum Mazorow,* Assistant Attorney General, for the Director of the Department of Job and Family Services.

JAMES L. KIMBLER, Judge.

## PROCEDURAL HISTORY

Appellant, Richard Johnson, filed an application for unemployment compensation benefits in July 1999. His claim was denied for two reasons. First, appellee Administrator of the Ohio Bureau of Employment Services (now, the Director of the Department of Job and Family Services) determined that Johnson quit his employment without just cause. Second, the Administrator determined that Johnson was not available for work.

Johnson timely filed successive administrative appeals of these determinations, all to no avail.

An administrative hearing was conducted on November 17, 1999, after which a decision was mailed on November 19, 1999. The hearing officer reversed the Administrator's decision that Johnson quit work without just cause and held that he was discharged by his former employer without just cause. Neither Johnson nor his former employer appealed this ruling.

However, the hearing officer also ruled that Johnson was unavailable for work and, therefore, not eligible for unemployment benefits. The hearing officer based his ruling on the fact that Johnson "is not available for work between 9:00 p.m. and 5:00 a.m." and the fact that his "entire work history is in occupations that

normally require evening or nighttime work." Johnson timely filed an application to institute further appeal on this issue. In a decision mailed December 21, 1999, appellee Unemployment Compensation Review Commission disallowed Johnson's request for review. From the commission's decision, Johnson timely filed the present appeal.

## FACTS

After reviewing the transcript, the court finds that the hearing officer's findings of fact accurately describe what happened between Johnson and his former employer relative to the termination of his employment. Accordingly, the court hereby adopts in their entirety the findings of fact as established by the hearing officer. Those facts are as follows:

"Prior to filing the claim in question, claimant had last been employed by CBS Personnel Services for whom he had worked from May, 1998 to July 23, 1999. CBS Personnel Services assumed the responsibility for servicing employees of Erieview Metal Treating Co., effective May, 1998. Claimant technically became an employee of CBS Personnel Services; however, he had been working at Erieview Metal Treating Co., since April, 1984.

"During claimant's employment history with Erieview Metal Treating Co., he had worked on each of the three shifts utilized by the employer. First shift is from 7:00 a.m. to 3:00 p.m. Second shift is from 3:00 p.m. to 11:00 p.m. Third shift is from 11:00 p.m. to 7:00 a.m. For the last four years of claimant's employment, he had worked on the first shift.

"In October, 1998, claimant underwent sleep disorder testing at Medina Hospital. Claimant was diagnosed as having obstructive sleep apnea.

"On or about May 14, 1999, claimant was approached by Mr. Bodenshatz, Plant Manager, and informed that the company was restructuring the foreman arrangement and claimant would be working the second shift. At that time, claimant informed Mr. Bodenshatz that he would not be able to work second shift. No specific reasons were given at that time; however, claimant generally remarked that a medical condition prevented him from working th[o]se hours.

"Claimant asked Mr. Bodenshatz to reconsider and, the following week, met with Mr. Bodenshatz again. Again, Mr. Bodenshatz informed claimant that the company would require him to assume foremanship of the second shift. When claimant informed Mr. Bodenshatz that he was not able to work those hours, he was informed that May 29, 1999 would be his last day of work.

"Claimant requested to meet with Mr. Kappas, Company President. On May 25, 1999, claimant met with Mr. Kappas. Again, claimant informed Mr. Kappas that he was unable to work the hours of second shift but gave Mr. Kappas no

specific reasons why. At this time, it was discussed that claimant would remain for several weeks following May 29, 1999, to do special projects.

"On or about June 2, 1999, claimant presented Mr. Bodenshatz with a statement from his physician. The statement read:

"'Patient has obstructive sleep apnea. He needs to practice good sleep hygiene, *i.e.* regular sleep time, avoid night and evening shift work.'"

"Mr. Bodenshatz informed claimant that he would review the document and put it in claimant's file.

"Claimant completed the special projects on or about July 23, 1999, and was separated from employment because he could not work the hours of second shift.

"Claimant is a 52–year–old male who has worked in [the] factory and trucking business for his entire work career. Based upon the directions of his physician, claimant is unavailable to work after 9:00 p.m. or prior to 5:00 a.m."

## APPLICABLE LAW

Pursuant to the requirements of R.C. 4141.29, a person who seeks unemployment benefits must meet a number of criteria. In the case *sub judice*, only one of these criteria is at issue, namely, whether appellant "[i]s able to work and available for *suitable* work" (emphasis added). R.C. 4141.29(A)(4)(a).

In addition, R.C. 4141.29(F) provides:

"Subject to the special exceptions contained in division (A)(4)(f) of this section and section 4141.301 of the Revised Code [neither of which applies to the present case], in determining whether any work is suitable for a claimant in the administration of this chapter, the director, in addition to the determination required under division (E) of this section, *shall consider the degree of risk to the claimant's health,* safety, and morals, the individual's physical fitness for the work, the individual's prior training and experience, the length of the individual's unemployment, the distance of the available work from the individual's residence, and the individual's prospects for obtaining local work." (Emphasis added.)

R.C. 4141.46 also provides as follows: "Sections 4141.01 to 4141.46, inclusive, of the Revised Code shall be liberally construed." This statute, according to a recent decision of the Seventh District Court of Appeals, "mandates that the Act be liberally construed to favor the persons benefited." *Abate v. Wheeling–Pittsburgh Steel Corp.* (1998), 126 Ohio App.3d 742, 748, 711 N.E.2d 299, 303.

Finally, the standard by which a court of common pleas is to review the present appeal is set forth in R.C. 4141.28(O)(1), which provides:

"If the court finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse and vacate such decision or it

may modify such decision and enter final judgment in accordance with such modification; otherwise such court shall affirm such decision."

## DISCUSSION

In his decision the hearing officer stated that the law applicable to the issue of whether appellant was available for work is as follows:

### Law

R.C. 4141.29(A)(1) to (6) provides that an individual is not eligible for benefits for any week unless the individual has met the following conditions:

(1) Filed a valid application for determination of benefit rights.

(2) Filed a timely claim for benefits.

(3) Registered at an employment office.

(4) Able to work and available for and actively seeking suitable work.

(5) Unable to obtain suitable work.

(6) Participates in profiling system if identified as needing reemployment services.

### Reasoning

The hearing officer further stated:

"The facts show that claimant is not available for work between the hours of 9:00 p.m. and 5:00 a.m. Claimant's entire work history is in occupations that normally require evening or nighttime work.

"Under these circumstances, the hearing officer finds that the Administrator properly held [that] claimant's availability is so restricted as to remove him from the labor market for his kind of employment and that he is, therefore, unavailable for work as required by law."

Appellees (the Administrator [now Director] and the commission) cite two unreported cases for the proposition that an unemployment compensation claimant is required to be available for any shift of work in order to satisfy the availability requirement of the statute. Because Johnson is not available to work any shift, appellees reach the conclusion that the decision denying Johnson benefits on that basis must be affirmed.

For a number of reasons, appellees' conclusion is not well founded. First, with respect to the unreported cases cited by appellees, they are inapplicable to the case at bar because said cases are distinguishable factually and legally. *West v. Bd. of Review* (Feb. 23, 1983), Lorain App. No. 3383, unreported, 1983 WL 3992,

a Ninth District Court of Appeals decision, involved a worker who was also a full-time high school student. After being laid off, the worker-student applied for unemployment benefits. His claim was denied on the basis that he was not available for work, given that he testified at his hearing that he would not quit school in order to take a job. The trial court upheld the denial of his claim, as did the court of appeals. However, the Court of Appeals did so on the basis of its statutory construction of a specific subsection of R.C. 4141.29 applicable to "[a]n individual who becomes unemployed while attending a regularly established school." See R.C. 4141.29(A)(4)(d). The record is devoid of any evidence that Johnson is an individual who became unemployed while attending a regularly established school. Accordingly, this subsection of R.C. 4141.29 does not apply to the case *sub judice,* nor does the *West* case, which interprets this subsection.

The other unreported case cited by appellees, *Watts v. Scottdel, Inc.* (Apr. 22, 1983), Fulton App. No. F–83–2, unreported, 1983 WL 6787, a Sixth District Court of Appeals decision, also involved a worker who was a high school student. This worker-student's claim for unemployment benefits was administratively denied on the basis that he was not available for work given that he would not work a "first shift" because he attended school from 8:45 a.m. to 2:45 p.m., Monday through Friday. On appeal, the common pleas court reversed. The court of appeals, however, reversed the trial court and upheld the denial of the claim. The appeals court reached its decision on the basis of the reasoning set forth in *West,* which case as noted above was decided on the basis of interpreting R.C. 4141.29(A)(4)(d), which also does not apply to the case at bar.

Appellees contend that "a claimant is not at liberty to pick and choose which shift he will work. He must make himself available to work any shift where work may be offered to him in order to qualify for unemployment compensation benefits pursuant to R.C. 4141.29(A)(4). *Watts v. Scottdel et al.* (April 22, 1983), Fulton App. No. F–83–2."

The court would be remiss if it did not make a number of observations about the foregoing quote. First, most of appellees' language is a quote from the *Watts* decision. The appellate court stated: "In short, a person in claimant's position is not at liberty to pick and choose which shift he will work. He must make himself available to work any shift where work may be offered to him in order to qualify for unemployment compensation benefits pursuant to R.C. 4141.29(A)(4)." *Watts, supra.*

More significant, however, is the fact that appellees did not include in their statement of legal principles the appellate court's language, "a person in claimant's position," which, put in factual context, means a worker who is also a full-time high school student. Simply put, *Watts* does not stand for the proposition of law that appellees assert.

Moreover, the court in *Watts* quoted the assignment of error (the state was the appellant) as follows:

" 'The Court of Common Pleas committed reversible error when it reversed the decision of the Board of Review because the evidence in the record supports the Referee's conclusion that the claimant was not available for suitable work as required by Section 4141.29(A)(4)(a) & *(d),* Ohio Revised Code." (Emphasis added.) *Watts, supra.*

The appellate court found this assignment of error well taken. Further, as defined by the assignment of error, *Watts* specifically dealt with subsection (d) of R.C. 4141.29(A)(4), a subsection that is not relevant to the case at bar.

Appellees' conclusion that the administrative decision that Johnson was properly denied unemployment benefits because he was unavailable for work is also incorrect for other reasons. However, the hearing officer misunderstood what the applicable law is, did not apply the correct law, and selectively applied other portions of the applicable law.

The hearing officer stated in the "LAW" section of his decision that one of the conditions that a claimant must satisfy is that he must be "able to work and available for and actively seeking suitable work." However, the exact wording of the statute relative to this condition is different. The statute provides: "No individual is entitled to a waiting period or benefits for any week unless the individual * * * [i]s able to work and available for *suitable* work and is actively seeking *suitable* work." (Emphasis added.) R.C. 4141.29(A)(4)(a).

 The hearing officer's failure to appreciate the statutory requirement that a claimant must be available for "suitable work," not just work, is further evidenced by the officer's ruling that Johnson is "unavailable for work as required by law." In his ruling, the hearing officer did not use the statutorily mandated adjective "suitable" to modify work.[1]

This failure is significant because "suitable," according to Black's Law Dictionary (6 Ed.1990) 1435, means "fit and appropriate for the end in view." Thus, under the statutory scheme under consideration, the only fit and appropriate work for Johnson is that which can be performed between the hours of 5:00 a.m. and 9:00 p.m. so as to not aggravate his documented health problem relating to obstructive sleep apnea.

---

1. The Ohio Legislature in 1949 specifically amended the Ohio General Code section that was the predecessor to R.C. 4141.29. The amendment included adding the adjective "suitable" to a number of subsections. For a history of these changes, see *Tary v. Unemp. Comp. Bd. of Review* (1954), 161 Ohio St. 251, 255, 53 O.O. 137, 138, 119 N.E.2d 56, 59.

■ Moreover, the hearing officer's decision is not correct because it selectively applied another provision of the applicable statute. In his reasoning, the hearing officer stated:

"The facts show that claimant is not available for work between the hours of 9:00 p.m. and 5:00 a.m. *Claimant's entire work history is in occupations that normally require evening or nighttime work.*

"Under these circumstances, the hearing officer finds that the Administrator properly held claimant's availability is so restricted as to remove him from the labor market *for his kind of employment* and that he is, therefore, unavailable for work as required by law." (Emphasis added.)

While the hearing officer does not articulate his reason for focusing on appellant's "work history" and "his kind of employment," there is, in the court's opinion, a statutory basis for doing so. Pursuant to the requirements of R.C. 4141.29(F), the administrator "in determining whether any work is suitable for a claimant * * *, shall consider the degree of risk to the claimant's health, safety, and morals, the individual's physical fitness for the work, *the individual's prior training and experience,* the length of the individual's unemployment, the distance of the available work from the individual's residence, and the individual's prospects for obtaining local work." (Emphasis added.)

While the court lauds the hearing officer for considering Johnson's prior training and experience in reaching a decision regarding whether any work is suitable for claimant, the court finds that the hearing officer failed to take into consideration in making that decision the "degree of risk to the claimant's health" and "safety," factors the statute also mandates that appellees consider.

■ Given that the hearing officer held that Johnson was not fired for just cause because he refused, based upon a verified medical condition, to work second shift for his employer, which shift was from 3:00 p.m. to 11:00 p.m., it is hard for this court to conceive how, if the hearing officer had considered Johnson's health and safety, that that the hearing officer would not have ruled that Johnson was available for suitable work given that he was willing to work six of the eight hours of the second shift, *i.e.,* from 3:00 p.m. to 9:00 p.m.

Finally, the Ohio Supreme Court in *Tary v. Unemp. Comp. Bd. of Review* (1954), 161 Ohio St. 251, 53 O.O. 137, 137, 119 N.E.2d 56, 57, paragraph three of the syllabus, ruled:

"Where a claimant under the Unemployment Compensation Act is a long-standing and conscientious member of a religious sect which teaches as one of its tenets that secular work on Saturday is a violation of the law of God, and where the claimant did not engage in work on Saturday in his last employment, his rejection in good faith of proffered employment which requires work on Saturday

will be excused as being unsuitable and a risk to *'claimant's* * * * *morals.'* " (Emphasis *sic.*)

The court recognizes that *Tary* is distinguishable on its facts from the present case, and that *Tary* involved a different subsection of R.C. 4141.29, namely the predecessor to R.C. 4141.29(D)(2)(b), which subsection disqualifies a claimant who refuses "without good cause to accept an offer of suitable work." However, it is this court's opinion that it would be incongruous of the Ohio judiciary to protect the subjective, albeit bona fide and conscientious, religious beliefs of an unemployment compensation claimant by not requiring such a claimant to perform secular work on a day that that person's religious denomination prohibits secular work, but not protect the health and safety of Johnson who suffers from an objective medical condition that prevents him from working from 9:00 p.m. to 5:00 a.m., particularly when the Ohio Legislature has mandated that appellee administrator shall consider, "in determining whether any work is suitable for a claimant in the administration of [R.C. Chapter 4141] * * *[,] the degree of risk to the claimant's health, safety, and morals * * *." R.C. 4141.29(F).

## HOLDING

For the foregoing reasons, the court finds that the appellees' denial of Johnson's claim for unemployment compensation benefits on the sole basis that he was "unavailable for work" was not in accordance with Ohio law, *i.e.,* was unlawful, and also unreasonable. Accordingly, the commission's decision is hereby modified as follows:

"The court determines that as a matter of law Johnson was 'available for suitable work,' as that phrase is used in R.C. 4141.29(A)(4), notwithstanding that Johnson is not able to work from 9:00 p.m. until 5:00 a.m. based upon a documented health condition that prevents him from working during those hours, said limitation on his hours of work being authorized and proper under R.C. 4141.29(F)."

Judgment is therefore granted to Johnson against appellees and appellees are hereby ordered to process Johnson's claim in light of the foregoing modification and holding. Costs taxed to appellees.

*Judgment accordingly.*